IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HARTFORD UNDERWRITERS INSURANCE COMPANY, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:25-cv-03188 |
| BUCHHEIT ENTERPRISES, INC. and JASON SHAVER., | § § § § | |
| Defendants. | § § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Hartford Underwriters Insurance Company ("Hartford"), by and through undersigned counsel, and pursuant to 28 USC §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, files this Complaint for Declaratory Judgment against Defendants Buchheit Enterprises, Inc. ("Buchheit") and Jason Shaver ("Shaver"), as follows:

## INTRODUCTION

1.      Hartford seeks declaratory relief regarding its duty to defend and indemnify its Named Insured, Buchheit, with respect to an action styled *Jason Shaver, on behalf of herself and all others similarly situated, v. Buchheit Enterprises, Inc*. Case No. 2024LA39, State of Illinois, Morgan County, Seventh Judicial Circuit ("Shaver Lawsuit"). The Shaver Lawsuit seeks statutory damages arising from Buchheit's alleged violation of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq*. ("GIPA"), which, according to the Shaver Lawsuit, prohibits employers, such as Buchheit, from directly or indirectly soliciting, requesting, or requiring the disclosure of genetic information as part of a preemployment application or a condition of employment. The policies issued to Buchheit by Hartford do not provide coverage

1.

for the claims asserted in the Shaver Lawsuit because the applicable insuring agreements are not satisfied and because several exclusions apply to further bar coverage.

## PARTIES

2. Plaintiff Hartford is a corporation organized under the laws of the State of Connecticut with its principal place of business located in the State of Connecticut.

3. Defendant Buchheit is a corporation organized under the laws of Missouri with its principal place of business in Missouri, and which is authorized to and transacts business in the State of Illinois.

4. Defendant Shaver is a natural person and a resident of Jacksonville, Illinois.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees, and costs.

6. Venue is proper in the United States District Court for the Central District of Illinois pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to declaratory judgment claim occurred in Morgan County, Illinois which is located in the Central District.

7. This matter is properly filed pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, because an actual controversy of a ripe and justiciable nature exists between Hartford and Buchheit as to whether insurance coverage exists for the claims asserted against Buchheit. The Court's declaration will confer certainty on the parties and serve the interests of justice.

# FACTS

A. **The Insurance Policies**

8. As potentially relevant here, Hartford issued policy No. 37 SBM AE3L67 to Buchheit for the following policy periods:

- November 7, 2019 to November 7, 2020
- November 7, 2020 to November 7, 2021
- November 7, 2021 to November 7, 2022
- November 7, 2022 to November 7, 2023
- November 7, 2023 to November 7, 2024
- November 7, 2024 to November 7, 2025 (collectively, the "Policies").

9. The Policies provide Business Liability Coverage and Employment Practices Liability Coverage, and the limits of liability vary depending on the applicable coverage part. The Business Liability Coverage Part has a Liability and Medical Expenses Limit of $1,000,000, a Personal and Advertising Injury Limit of $1,000,000, and a General Aggregate Limit of $2,000,000. The Employment Practices Liability Coverage Part has an Each Claim Limit of Liability of $25,000 and an Annual Aggregate Limit of $25,000.

   i. ***The Business Liability Coverage Part***

10. Coverage A.1. contained in the Business Liability Coverage Part applies to: (1) sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence," provided the "bodily injury" or "property damage" take place during the applicable policy period; and (2) sums the insured becomes legally obligated to pay as damages because of "personal and advertising injury" caused by an offense arising out of the insured's business, provided the offense was committed during the applicable policy period.

11. With respect to Coverage A.1., and pursuant to Section F, Liability and Medical Expenses Definitions, the term "bodily injury" means physical:

   a. Injury;
   b. Sickness; or
   c. Disease

   sustained by a person and, if arising out of the above, mental anguish or death at any time.

12. The term "property damage" is defined to include:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it….

13. The Policies define "personal and advertising injury" as injury, including consequential "bodily injury," arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;
    b. Malicious prosecution;
    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor;
    d. Oral, written, electronic, or any other manner of publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    e. Oral, written, electronic, or any other manner of publication of material that violates a person's right of privacy;
    f. Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement"; or
    g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement".

14. Coverage Part A.1. is also subject to various exclusions, including Exclusion p. Personal and Advertising Injury, which provides in relevant part that coverage is excluded for "personal and advertising injury:"

   (11) Arising out of the violation of a person's right of privacy created by any state or federal act. However, this exclusion does not apply to liability

>> for damages that the insured would have in the absence of such state or federal act….
>
> (15) Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.
>
> This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information….

15. Additionally, Coverage Part A.1. is subject to Exclusion q. Access or Disclosure of Confidential or Personal Information and Data-related Liability, which excludes coverage for:

> (1) Damages because of "bodily injury" or "property damage" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or
>
> (2) Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".
>
> This exclusion applies even if such damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraphs **(1)** or **(2)** above.
>
> However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

16. Coverage Part A.1. is subject to Exclusion r. Employment-Related Practices, which negates coverage for:

> "Bodily injury" or "personal and advertising injury" to:
>
> (1) A person arising out of any:
>
> (a) Refusal to employ that person;

  (b)  Termination of that person's employment; or

  (c)  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, malicious prosecution or false arrest directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

 This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs **(a)**, **(b)**, or **(c)** above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 17. Coverage Part A.1. also includes Exclusion t. Recording and Distribution of Material or Information In Violation of Law, which excludes coverage for:

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

 (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

 (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

 (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

 (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

6

### ii. *The Employment Practices Coverage Part*

18. The Employment Practices Liability Coverage Part provides claims-made coverage. As such, Employment Practices Liability Coverage is potentially implicated only under the Policy issued to Buchheit for the November 7, 2024 to November 7, 2025 policy period, when the Shaver Lawsuit was filed and reported to Hartford.

19. The Employment Practices Liability Coverage Part applies to "loss" resulting from an "employment practices claim" first made against Buchheit during the "policy period" or Extended Reporting Period, if applicable, for an "employment practices wrongful act" committed by Buchheit.

20. Pursuant to Section II – Definitions of the Employment Practices Liability Coverage Part, the term "loss" is defined to include "claim expenses" and "damages".

21. "Claim expenses" are defined to include, among other things, "reasonable and necessary legal fees and expenses incurred in the defense or appeal of a 'claim.'"

22. The term "damages" means the amounts, other than "claim expenses", that the "insureds" are legally liable to pay solely as a result of a "claim" covered by the Employment Practices Coverage Part, including:

   1. compensatory damages, including front pay and back pay;
   2. settlement amounts;
   3. pre- and post-judgment interest;
   4. costs awarded pursuant to judgments;
   5. punitive and exemplary damages;
   6. the multiple portion of any multiplied damage award; or
   7. liquidated damages under the Age Discrimination in Employment Act and the Family and Medical Leave Act.

   However, "damages" shall not include

   a. taxes, fines or penalties imposed by law;
   b. non-monetary relief;
   c. "Benefits";

    d. future compensation for any person hired, promoted, or reinstated pursuant to a judgment, settlement, order or other resolution of a "claim";

    e. "Stock benefits";

    f. costs associated with providing any accommodations required by the Americans with Disabilities Act or any similar law; or

    g. any other matters uninsurable pursuant to any applicable law; provided, however, that with respect to punitive and exemplary damages, or the multiple portion of any multiplied damage award, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages.

23. Pursuant to the Missouri Changes – Employment Practices Liability Endorsement, the following is added to the definition of the term "damages:"

> With respect to the insurability of punitive or exemplary damages in the state of Missouri, "damages" does include coverage for punitive or exemplary damages.

24. "Employment practices claim" is defined as any:

1. written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;

2. civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

3. formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document; by or on behalf of an "employee", an applicant for employment with an "insured entity", or an "independent contractor".

"Employment practices claim" also means the receipt of a notice of violation, order to show cause, or a written demand for monetary or injunctive relief that is the result of an audit conducted by the United States Office of Federal Contract Compliance Programs.

"Employment practices claim" also means a written request to the "insureds" to toll or waive a statute of limitations regarding a potential "Employment

practices claim" as described above. Such "claim" shall be commenced by the receipt of such request.

However, "employment practices claim" shall not include any labor or grievance proceeding or arbitration that is subject to a collective bargaining agreement.

25. The term "Employment practices wrongful act" is defined as:

   1. wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

   2. sexual or other workplace harassment, including bullying in the workplace, quid pro quo and hostile work environment;

   3. employment discrimination, including discrimination based upon age, gender, race, color, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

   4. "Retaliation";

   5. breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or

   6. violation of the Family and Medical Leave Act.

   "Employment practices wrongful act" also means the following, but only when alleged in addition to or as part of any "employment practices wrongful act" described above:

   a. employment-related wrongful infliction of mental anguish or emotional distress;
   b. failure to create, provide for or enforce adequate or consistent employment related policies and procedures;
   c. negligent retention, supervision, hiring or training;
   d. employment-related invasion of privacy, defamation, or misrepresentation; or
   e. an "employee data privacy wrongful act".

26. The Employment Practices Liability Coverage Part is also modified by the Third Party Liability Endorsement, pursuant to which Hartford agreed to pay for "loss" on behalf of the "insureds" resulting from a "third party claim" first made against Buchheit during the "policy period" or the Extended Reporting Period, if applicable, for a "third party wrongful act" committed by Buchheit.

27. The Third Party Liability Coverage Endorsement defines the term "third party" as "any natural person who is a customer, vendor, service provider or other business invitee of an 'insured entity'. 'Third party' shall not include 'employees'".

28. A "third party claim" is defined to include any:

    1. written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand;

    2. civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

    3. Formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

    by or on behalf of a "third party."

29. The term "third party wrongful act" is defined to include

    1. discrimination against a "third party" based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state or local law; or

    2. sexual harassment or other harassment of a "third party", including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature.

B.  **The Shaver Lawsuit**

30. On December 24, 2024, Shaver, individually and on behalf of other similarly situated individuals, filed a Class Action Complaint against Buchheit arising out of Buchheit's alleged violations of GIPA.

31. According to the Shaver Lawsuit, GIPA prohibits an employer from directly or indirectly soliciting, requesting, or requiring an individual to provide genetic information, or the genetic information of that individual's family members, as a condition of employment or as part of any preemployment application.

32. Shaver alleges that Buchheit, as part of its hiring process, requires prospective employees to undergo a physical examination. The physical examination allegedly includes the solicitation of information regarding the manifestation of diseases and disorders in family members of the prospective employee. In addition to this statutorily prohibited conduct, Buchheit also allegedly failed to inform prospective employees, including Shaver, of their right not to answer any questions regarding their genetic information.

33. With regard to Shaver, she allegedly applied for a job with Buchheit to work at Buchheit's store in Jacksonville, Illinois. As part of the hiring process, and as a precondition of employment and the preemployment application, Buchheit allegedly required Shaver to submit to a physical examination.

34. During that examination, Buchheit allegedly required Shaver to answer questions concerning her family medical history, specifically the manifestation of diseases or disorders in her family members. Such questions allegedly included whether Shaver's family members had a history of diabetes, heart disease, kidney disease, and other medical conditions. In response, Shaver allegedly disclosed her genetic information, including diseases and disorders with which her family members have been diagnosed.

35. Shaver alleges that her sensitive genetic information was requested by Buchheit and obtained by Buchheit as a condition of her employment. Shaver further asserts that prior to providing her sensitive genetic information to Buchheit, she was not advised by Buchheit or anyone acting on behalf of Buchheit of her right not to disclose the requested genetic information.

36. Shaver, on behalf of herself and the Class, asserts a cause of action against Buchheit for violation of GIPA. This cause of action is premised on Shaver's assertion that, as a result of Buchheit's conduct, she and the other Class members have been aggrieved by Buchheit's violation of their statutorily protected rights to privacy in their genetic information.

37. Shaver seeks the following damages on behalf of herself and proposed members of the Class: (1) injunctive and equitable relief requiring Buchheit to comply with GIPA's requirements; (2) statutory penalties of $15,000 for each reckless or intentional violation of GIPA; (3) statutory penalties of $2,500 for each negligent violation of GIPA; and (4) reasonable attorneys' fees and costs.

**COUNT ONE**
**Declaratory Judgment – No Duty to Defend or Indemnify Buchheit for the Shaver Lawsuit under the Business Liability Coverage Part contained in the Policies**

38. Hartford restates and incorporates the preceding paragraphs as if fully set forth herein.

39. An actual controversy exists as to whether Hartford has an obligation to defend and/or indemnify Buchheit for the claims asserted in the Shaver Lawsuit under the Business Liability Coverage Part of the Policies.

40. Hartford requests a declaration of the parties' rights and obligations under the Business Liability Coverage Part contained in the Policies. Specifically, Hartford requests a

declaration that it is not obligated to defend or indemnify Buchheit under the Business Liability Coverage Part for the claims asserted in the Shaver Lawsuit for one or more of the reasons specified below.

41. As noted above, the Business Liability Coverage Part provides coverage to Buchheit for those sums that Buchheit becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" as well as those sums Buchheit becomes legally obligated to pay as damages because of "personal and advertising injury" caused by an offense arising out of Bucheit's business.

42. The Shaver Lawsuit seeks injunctive relief, equitable relief, and statutory penalties imposed by GIPA, rather than actual monetary damages in compensation for a loss. Thus, based on the claims as presently alleged, Shaver is not seeking recovery of sums that Buchheit is allegedly legally obligated to pay "as damages" as that term is construed under applicable law.

43. The Shaver Lawsuit does not seek damages because of "bodily injury," "property damage" or "personal and advertising injury" as those terms are defined under the Policies.

44. Specifically, the Shaver Lawsuit contains no allegations that Shaver suffered physical injury, sickness, or disease due to Buchheit's purported conduct, i.e., "bodily injury."

45. Nor does Shaver contend to have sustained physical injury to and/or a loss of use of tangible property. i.e., "property damage."

46. The Shaver Lawsuit does not allege any injury due to any of the specifically enumerated offenses required to satisfy the definition of "personal and advertising injury."

47. Rather, the Shaver Lawsuit seeks injunctive relief and equitable relief arising out of Buchheit's request for Shaver's family medical history, which Shaver alleges violated GIPA.

48. Because the Shaver Lawsuit does not assert a claim for damages because of "bodily injury," "property damage," or "personal and advertising injury," the requirements of the insuring agreement for Coverage A.1. are not satisfied, and thus, Hartford has no duty to defend or indemnify Buchheit under Coverage Part A.1.

49. Several exclusions also bar coverage for the Shaver Lawsuit under Coverage Part A.1.

50. As relevant here, Exclusion p. Personal and Advertising Injury precludes coverage for damages because of "personal and advertising injury" arising out of: (1) violation of a person's right of privacy created under any state or federal act; and (2) access to any person's confidential or personal information, including health information or any other type of nonpublic information.

51. According to the Shaver Lawsuit, Buchheit violated Shaver's statutorily protected rights to privacy under GIPA via a mandated pre-employment physical examination, during which Buchheit requested and obtained information concerning Shaver's family medical history (i.e., health information or nonpublic information). Because the claims arise out of a right created under GIPA and involve Buchheit's alleged access to Shaver's health information, Exclusion p. Personal and Advertising Injury excludes coverage.

52. Additionally, Exclusion q. Access or Disclosure of Confidential or Personal Information and Data-related Liability bars coverage for damages because of "bodily injury" or "property damage" arising out of any access to any person's confidential or personal information, including health information or any other type of nonpublic information.

53. Shaver seeks damages arising from Buchheit's alleged solicitation of her sensitive genetic information via a mandated pre-employment physical examination, pursuant to which

Buchheit accessed information concerning Shaver's family medical history (i.e., health information or nonpublic information). For these reasons, Exclusion q. Access or Disclosure of Confidential or Personal Information and Data-related Liability excludes coverage for the Shaver Lawsuit.

54. Exclusion r. Employment-Related Practices negates coverage for (among other things) "bodily injury" and "personal and advertising injury" arising out of, among other things, any employment-related practices, policies, acts, or omissions.

55. The claims alleged in the Shaver Lawsuit arise out of a physical examination and request for family medical history, which occurred as part of Shaver's employment process with Buchheit, and thus, arise out of an employment-related practice and policy. Accordingly, Exclusion r. Employment-Related Practices also excludes coverage for the Shaver Lawsuit.

56. Exclusion t. Recording and Distribution of Material or Information in Violation of Law bars coverage for damages because of "bodily injury," "property damage," and "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate any federal, state or local statute, ordinance or regulation that addresses, prohibits or limits the collecting or recording of material or information.

57. The Shaver Lawsuit alleges that Buchheit collected and recorded her sensitive genetic information (specifically her family medical history) via a mandated pre-employment physical examination, in violation of Illinois' GIPA, which addresses the collection of genetic information. Thus, Exclusion t. Recording and Distribution of Material or Information in Violation of Law bars coverage.

58. For all these reasons, Hartford requests a declaration it owes no duty to defend or duty to indemnify Buchheit in the Shaver Lawsuit under Coverage Part A.1. of the Policies.

# COUNT TWO
### Declaratory Judgment – No Coverage for the Shaver Lawsuit under the Employment Practices Liability Coverage Part contained in the Policies

59. Hartford restates and incorporates the preceding paragraphs as if fully set forth herein.

60. An actual controversy exists as to whether Hartford owes any obligations to Buchheit for the claims asserted in the Shaver Lawsuit under the Employment Practices Liability Coverage Part of the Policies.

61. Hartford requests a declaration of the parties' rights and obligations under the Employment Practices Liability Coverage Part contained in the Policies. Specifically, Hartford requests a declaration that it is not obligated to provide coverage to Buchheit under the Policies' Employment Practices Liability Coverage Part for the claims asserted in the Shaver Lawsuit for the reasons specified below.

62. As relevant here, the Employment Practices Liability Coverage Part, as amended by the Third Party Liability Endorsement, applies to "loss" resulting from (a) an "employment practices claim" first made against Buchheit during the "policy period" for an "employment practices wrongful act" by Buchheit or, (b) a "third party claim" first made against Buchheit during the "policy period" for a "third party wrongful act" by Buchheit.

63. The Shaver Lawsuit does not allege an "employment practices wrongful act" as that term is defined under the Employment Practices Liability Coverage Part. Specifically, the claims asserted against Buchheit do not involve any of the wrongful conduct enumerated in the definition of "employment practices wrongful act." Specifically, Shaver does not assert claims alleging wrongful dismissal, discharge, or termination; wrongful refusal to employ; wrongful discipline or demotion; wrongful failure to grant tenure; wrongful deprivation of a career

opportunity; negligent employment evaluation; sexual or other harassment; or employment discrimination based on genetic makeup or refusal to submit to genetic testing. Shaver only alleges that Buchheit improperly requested and acquired family medical history information during her employment application process, in violation of GIPA.

64. Nor does the Lawsuit allege a "third party wrongful act" as that term is defined under the Third Party Liability Endorsement. First, the defined term "Third party" excludes an employee, and thus, to the extent Shaver is or was an employee of Buchheit, he does not qualify as a "third party" and his claim against Buchheit does not qualify as a "third party claim" or a "third party wrongful act."

65. Additionally, the claims asserted against Buchheit in the Shaver Lawsuit do not involve any of the wrongful conduct identified in the definition of "third party wrongful act." Specifically, Shaver does not assert claims alleging discrimination, sexual harassment or other harassment.

66. Lastly, Shaver does not seek to impose "damages" upon Buchheit as that term is defined under the Employment Practices Liability Coverage Part. The Shaver Lawsuit seeks injunctive and equitable relief (non-monetary damage) and statutory penalties available under GIPA. The term "damages," however, explicitly excludes taxes, fines or penalties imposed by law and non-monetary relief.

67. For these reasons, Hartford requests a declaration that the Employment Practices Liability Coverage Part, as amended by the Third Party Liability Endorsement, does not provide coverage for the claims asserted in the Shaver Lawsuit and that Hartford has no obligations under those Coverage Parts with respect to the Shaver Lawsuit.

**PRAYER FOR RELIEF**

WHEREFORE, Hartford Underwriters Insurance Company respectfully requests that the Court grant judgment awarding the following relief:

a. Declaring the parties' respective rights and obligations under the Policies pursuant 28 U.S.C. § 2201, as more specifically described above;

b. Granting supplemental relief pursuant to 28 U.S.C. § 2201-2202, including any proper relief in regard to this Court's declaration of the parties' rights and obligations under the Policies;

c. Costs of court; and

d. Such other and further relief as may be appropriate.

Date:  July 2, 2025

Respectfully submitted,

SPENCER FANE LLP

/s/ Jeremy M. Brenner
Jeremy M. Brenner, #6308640
1 North Brentwood Blvd., Suite 1200
St. Louis, MO 63105
(314) 333-3872
jbrenner@spencerfane.com

Scott L. Davis (pro hac vice forthcoming)
*Lead Counsel*
2200 Ross Ave., Suite 4800
Dallas, TX 75201
Tel: (214) 750-3610
Fax: (214) 750-3612
sdavis@spencerfane.com

Tyler J. Scott (pro hac vice forthcoming)
1000 Walnut, Suite 1400
Kansas City, MO 64106
Tel: (816) 474-8011
Fax: (816) 474-3217
tscott@spencerfane.com

***Attorneys for Plaintiff Hartford Underwriters Insurance Company***